## J. BEARDALL, *alias* DENNEN, *v.* THE STATE.

1. TRANSCRIPT — INDICTMENT. — To sustain a felony conviction, on appeal, it is indispensable that the transcript bring up the original indictment against the appellant, or, if that has been lost, a substitute indictment supplied in the manner prescribed by law.

2. LOST INDICTMENT. — The duty of supplying a lost indictment is not incumbent on the defendant, who, not being its custodian, is not responsible for its loss. Note the peculiar state of facts in the present case.

3. CASE STATED. — In 1859 one Beardall was tried and found guilty of murder in the first degree, but escaped before final judgment. In 1877 the appellant was arrested as Beardall, and, on being brought before the court below for final judgment, he denied that he was Beardall, or was ever so tried or found guilty, and alleged that he was Dennen. An issue on the question was submitted to a jury, who found that he was Beardall, and thereupon the court rendered final judgment on the verdict of 1859, and sentenced him to be hung. On his appeal from the sentence the transcript fails to bring up any indictment, because, as the clerk certifies, the indictment is lost. *Held*, that, as no indictment appears in the transcript, the conviction must be set aside and the cause remanded.

APPEAL from the District Court of Bexar.   Tried below before the Hon. G. H. NOONAN.

The opinion of this court gives a concise, but clear, outline of the proceedings in the court below in this peculiar case, and indicates all facts relevant to the rulings here.

From witnesses examined below, the fact was elicited that the trial and conviction of James Beardall, in 1859, was for the murder of one Louis Vare.   In certifying the present transcript, the district clerk states that he was unable to find the indictment and other file-papers pertaining to the original trial.   The only relics, consequently, are the entries upon the minutes of the court.   These begin with an entry dated September 15, 1858, showing the presentment by the grand jury of an indictment against James Beardall and James Draper.   Next come the trial and judgment entries, of date September 27, 28, and 29, 1859, which show that there was a severance of the defendants, and narrate the arraignment of James Beardall, his plea of not guilty, the refusal of a continuance, the organization of a jury, " elected, examined, challenged, tried, and sworn a true verdict to render, according to the law and the evidence," the progress of the trial and the adjournment from day to day, the verdict of " guilty of murder in the first degree," and, finally, a judgment against the defendant for costs, and remanding him to await sentence.   These were all of the entries made in the case prior to the proceedings taken in the court below, at its fall term, 1877, which have resulted in the present appeal, and which account for the eighteen years' *interim* by the allegation that Beardall escaped soon after the verdict of 1859, but had recently been rearrested.

The record entry respecting the first of these new proceedings is dated November 15, 1877, and states that "this day comes M. G. Anderson, county attorney for Bexar County, and James Beardall being present in his own

proper person, and moves the court to amend the judgment heretofore entered in this cause *nunc pro tunc*, in accordance with the verdict of the jury rendered herein, and entered of record in the minutes of this court on the 29th day of September, A. D. 1859," and the entry proceeds to set out the motion. The substance of this motion, and of the further proceedings which eventuated in the present appeal, will be found in the opinion of this court.

It will be seen that the only issue tried in the course of these last proceedings was the question of fact — whether the appellant was or was not James Beardall, the man tried and convicted, in 1859, of murder in the first degree. And one of the most singular features of this case is the remarkable conflict of the testimony on this issue. Each side confronted the other with a cohort of witnesses, strong in numbers, and, in the main, composed of old citizens noted for intelligence as well as unimpeachable reputation. Nearly all had often seen and closely observed James Beardall, prior to or during his trial in 1859. With very few exceptions, those examined for the State were positive that the prisoner at the bar was the veritable Beardall; while, of those for the defense, some were positive, and all confident, that he was not. In view of the rulings, a detail of the testimony *pro* and *con*, however entertaining, would serve no useful purpose in this report. The jury found the prisoner to be James Beardall, and returned a verdict to that effect.

At a subsequent day of the term, sentence of death, in accordance with the amended judgment, was passed upon the appellant, as James Beardall. He appealed from the sentence, and his counsel assigned errors, of which some impugn the original conviction, and the rest assail each and all of the proceedings had at the fall term, 1877, of the court below.

*B. Coopwood*, and *Portis & Robinson*, for the appellant, filed a forcible and able brief.

*George McCormick*, Assistant Attorney-General, for the State, cited, in support of the proceedings, *Vestal* v. *The State*, 3 Texas Ct. App. 655, and *Smith* v. *The State*, 1 Texas Ct. App. 408, and the authorities there cited.

Ector, P. J. This is an appeal from a judgment of the District Court of Bexar County against appellant for murder in the first degree, in which the punishment assessed is death. The judgment appealed from was, on motion of the county attorney, entered eighteen years after the verdict of the jury was rendered, the first judgment in the case being held defective by the court.

This motion, after giving the style of the case, states that the defendant, James Beardall, in the above entitled cause, was duly tried and convicted of the crime of murder in the first degree; that shortly afterwards he made his escape, has been again arrested, and is now confined in the county jail of Bexar County; and asks that a judgment *nunc pro tunc* be rendered against him. The judgment first rendered is attached to the motion, and is defective —

"1. Because it is not a final judgment; and,

"2. Because it recites that a different oath from that required by the statute was administered to the jury."

The motion was granted, and the judgment appealed from was entered. This last judgment has all the necessary constituents of a final judgment, and recites that the jury "were duly elected, tried, impaneled, and sworn according to law."

The appellant, after his arrest, being brought before the court at its fall term, 1877, denied that he was James Beardall, and denied that he had ever been indicted, tried,

or convicted of a felony in said court under the name of James Beardall, but said his name was James Dennen; whereupon the court ordered an issue to be made up, and a jury impaneled to try the issue made up by such denial, which was accordingly done; and the jury, after hearing the evidence, argument of counsel, and charge of the court, returned the following verdict, to wit: "We, the jury, find the prisoner at the bar is James Beardall." The court then proceeded to sentence the appellant.

There are a number of very interesting questions presented in the record, only one of which we deem it necessary to notice in this opinion. The transcript before us contains no indictment against appellant. He filed a motion in arrest of judgment in the lower court, which was overruled. The first ground stated in the motion is, "that there is no indictment against him in this cause." Our attention is specially called to the action of the judge who presided at the trial in overruling the motion in arrest of judgment.

Article 1, section 10, of the Constitution of this state provides that "no person shall be held to answer for a criminal offense, unless on indictment of a grand jury, except in cases in which the punishment is by fine, or imprisonment otherwise than in the penitentiary, in cases of impeachment, and in cases arising in the army or navy, or in the militia when in actual service in time of war or public danger."

Article 390 of the Code of Criminal Procedure, also, provides that "all felonies shall be presented by indictment only, except in cases specially provided for." Pasc. Dig., art. 2859.

The assistant attorney-general, in his able brief, says that appellant cannot complain that the indictment does not appear in the transcript of the record; if he complains of this omission, he should have taken the proper steps to have the record supplied; that, having sought safety in flight,

and evaded the arm of the violated law so long, he ought not now be heard to say that the record is not a complete one, especially as he denied before the court below that he was the real defendant.

We believe that the case at bar occupies the same *status* before this court as all other criminal cases do on appeal, and, to sustain this conviction, that the transcript should include the indictment on which this prosecution is based; or, if it had been lost or mislaid, that another indictment should have been substituted, and that it is no part of a defendant's duty to substitute a lost indictment. He is not the keeper of the record, and is in no way chargeable with the absence of the original.

There is in this state a statute regulating the practice of supplying lost indictments, which is as follows, to wit:

"Art. 2873. When an indictment has been lost or mislaid, the district attorney may suggest the fact to the court, and the same shall be entered upon the minutes of the court, and in each case another indictment may be substituted, upon the written statement of the district attorney that it is substantially the same as that which has been lost or mislaid, or another indictment may be presented to the grand jury; and in such case the period for the commencement of the prosecution shall be dated from the time of making such entry."

We have searched in vain for an adjudicated case, where the prosecution was by indictment, in which a judgment of conviction has been sustained when the record failed to show the indictment; or, if the original indictment had been lost, a substituted indictment. The case of *Hitchcock* et al. v. *The State*, 21 Ind. 279, is in point. The prosecution was for burglary. Perkins, J., in delivering the opinion of the court, says: "The record shows no indictment or information against the defendants. In return to a *certiorari*, the clerk says the papers are lost, and copies, therefore,

cannot be given. The judgment will, of course, have to be reversed, and the defendants will be remanded back to the jail of Tippecanoe County, for final disposition by the proper court of that county."

We are not authorized, by affirming the judgment in the case at bar, to introduce a practice which would tend to impair the efficiency of one of those safeguards which the law has provided for the protection and security of the citizens. Whenever a judgment of conviction is affirmed in a capital felony, in the absence of an original or substituted indictment, it seems to us it will not be done in accord with the spirit that regulates the proceedings in criminal trials.

Because there is no indictment in the record, the judgment of the District Court is reversed and the cause remanded.

*Reversed and remanded.*